UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL LUPO** | **CIVIL ACTION** |
| **versus** | **No. 05-2196** |
| **MARRERO ESTELLE VOLUNTEER FIRE CO. NO. 1** | **SECTION I/5** |

### ORDER AND REASONS

Before the Court is the motion for summary judgment submitted by defendant, Marrero Estelle Volunteer Fire Company No. 1 ("MEVF"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff, Michael Lupo ("Lupo"), opposes the motion.[2] Also before the Court is plaintiff's motion to strike two exhibits from defendant's motion as inadmissible summary judgment evidence. For the following reasons, plaintiff's motion to strike and defendant's motion for summary judgment are **GRANTED**.

### *BACKGROUND*

Defendant hired plaintiff as a fire department operator on May 28, 2003.[3] MEVF is a

---

[1] Rec. Doc. No. 14.

[2] Rec. Doc. No. 19.

[3] Rec. Doc. No. 14, Def.'s Statement of Material Facts as to Which There Are No Genuine Issues to Try ("Statement of Material Facts"), p. 2 ¶ 12. Plaintiff's opposition and complaint list the start of his employment as May, 2002. In his response to defendant's

1

non-profit corporation organized pursuant to Louisiana law that has contracted with Jefferson Parish Fire Protection District No. 8 to provide fire protection and suppression services. MEVF is operated by a board of directions whose members are selected by the MEVF general membership.[4]

During his tenure with MEVF, plaintiff received three written reprimands. On or about March 20, 2004, plaintiff was given a written reprimand for disobeying the direct order of Brent Barrios to clean the fire department's bay area.[5] In April, 2004, plaintiff received a second written reprimand for removing a mattress from the station bedroom and placing it on the floor of the weight room despite being told not to do so.[6] In September, 2004, plaintiff received his third written reprimand for taking MEVF property without proper authorization.[7]

At one point during his employment with MEVF, plaintiff organized a meeting with a union representative during work hours and on MEVF property. Plaintiff was not disciplined; instead, Chief Perry LeBlanc discussed the matter with him privately. Plaintiff admits that Chief LeBlanc was correct to advise him that such a meeting should not be conducted during work

---

statement of material facts, however, plaintiff admits to ¶ 12. Further, at the October 21, 2004, board hearing, plaintiff stated that he had worked at MEVF for one and one-half years, which supports the start date asserted by defendant.

[4] Rec. Doc. No. 14, Def.'s Statement of Material Facts, pp. 1-2.

[5] Rec. Doc. No. 14, Def.'s Statement of Material Facts, p. 2 ¶ 14; admitted by Def., Rec. Doc. No. 19, Pl.'s Response to Def.'s Statement of Uncontested Material Fact, p. 2, ¶ 14.

[6] Rec. Doc. No. 14, Def.'s Statement of Material Facts, p. 3 ¶ 21; admitted by Def., Rec. Doc. No. 19, Pl.'s Response to Def.'s Statement of Uncontested Material Fact, p. 2, ¶ 21.

[7] Rec. Doc. No. 14, Def.'s Statement of Material Facts, p. 3 ¶ 22; admitted by Def., Rec. Doc. No. 19, Pl.'s Response to Def.'s Statement of Uncontested Material Fact, p. 2, ¶ 22.

hours.[8]  Plaintiff also admits that it was common for firefighters to discuss unions while on duty.[9]

Chief LeBlanc eventually recommended to the MEVF board that plaintiff's employment be terminated.  On October 21, 2004, plaintiff attended a meeting held by the board; there, the board held a disciplinary hearing outside of the presence of the general membership.  The meeting was attended by board members Jeremy Floyd, Don Simoneaux, Bruce Paradelas, Paul Wetzel, David Ramono, Brent Barrios, Tim Herdt, and Chief LeBlanc.  Barrois is a member of a firefighters' union.[10]

At the hearing, plaintiff was questioned by the board about the details surrounding his written reprimands and other events.  Plaintiff admitted that he falsely told other MEVF employees that he had hired a lawyer who had forced Deputy Chief Tim Herdt to apologize to him for giving plaintiff a certain truck assignment.  Plaintiff also admitted that he told another fire department that MEVF had not given him a physical fitness examination when he started work there, though MEVF had actually used the results from a  previous examination at another department.[11]  During the hearing, plaintiff asked the board members if any had a problem, or "hard feelings," with regard to his comments about a union.[12]  The minutes of the hearing reflect that the board explained to plaintiff that the meeting was "not about a union or anything about

---

[8]Rec. Doc. No. 14, Def.'s Ex. P, p. 73.

[9]Rec. Doc. No. 14, Def.'s Ex. P, p. 73.

[10]Rec. Doc. No. 14, Def.'s Ex. E, p. 2.

[11]Plaintiff, however, denies that he claimed that MEVF had actually refused to give him a physical examination.

[12]Rec. Doc. No. 14, Def.'s Ex. L, p. 2.

unions.  It [was] only about the issues discussed" that night.[13]

At the conclusion of the hearing, the board members voted unanimously to terminate plaintiff.  The board's notice of termination indicated that plaintiff had been terminated for:  (1) disobeying a direct order from an officer, (2) lack of truthfulness, and (3) removing MEVF property without proper authorization.[14]

On June 9, 2005, plaintiff filed his complaint with this Court, alleging that MEVF had violated his right to free speech as guaranteed by the First Amendment to the United States Constitution.[15]  His complaint alleges violations of 42 U.S.C. § 1983, the Louisiana Right to Work law, La. Rev. Stat. 23:981 et seq., and the "Little Norris-LaGuardia Act," La. Rev. Stat. 23:822 et seq.  Defendant filed the instant motion on January 10, 2006.  After being dismissed without prejudice because of a local procedural issue, the motion was reinstated on January 23, 2006.[16]  Plaintiff opposes the motion.[17]

## LAW AND ANALYSIS

*I. Standard of Law*

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact.

---

[13] Rec. Doc. No. 14, Def.'s Ex. L, p. 2.

[14] Rec. Doc. No. 14, Def.'s Ex. M.

[15] Rec. Doc. No. 1.

[16] Rec. Doc. No. 16.

[17] Rec. Doc. No. 19.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*  The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."  *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999) (internal quotation and citation omitted) (alternation in original).

*II. Motion to Strike*

Plaintiff argues that two of the exhibits attached to defendant's motion for summary judgment must be stricken because they are not sworn "under penalty of perjury" as required by 28 U.S.C. § 1746.[18]  *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 130, 1306 (5th Cir. 1988) ("28 U.S.C. § 1746 . . . permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'").  Defendant does not oppose the motion[19] and, therefore, the Court will not consider those exhibits.

Notwithstanding its concession, defendant, in its memorandum in response to the motion to strike, argues that, "insofar as the statements are incorporated into the deposition of Mr. Lupo, they can be properly considered on the instant" motion.[20]  Defendant does not offer any explanation, however, as to why attaching these exhibits to a properly admitted deposition would circumvent or cure their lack of proper verification except to state that plaintiff has not objected to these particular versions of the exhibits.  The Court will consider Lupo's deposition testimony as it relates to these exhibits; however, the Court does not find that the exhibits themselves are admissible as proper summary judgment evidence.

*III. State Actor Question*

Defendant cites *Yaeger v. City of McGregor*, 980 F.2d 337 (5th Cir. 1993), to suggest

---

[18]Rec. Doc. No. 18.  Plaintiff seeks to strike defendant's exhibits "N" and "O."

[19]Rec. Doc. No. 20.

[20]Rec. Doc. No. 20, p. 2.

that MEVF is not a state actor and, therefore, is immune from plaintiff's § 1983 claim.[21] Defendant offers no further support for this proposition, and plaintiff fails to address this argument in his opposition. In *Yaeger*, the court analyzed a volunteer fire department that was organized in Texas as an unincorporated association. While holding that the fire department was not a state actor, the court declined to establish a general rule. *Id.* at 339.

The factual difference between the unincorporated Texas fire department in *Yaeger* and the Louisiana non-profit corporation at issue in this case makes it impossible for defendant's citation to *Yaeger* to end the Court's inquiry. Moreover, the dearth of Louisiana cases addressing this issue leaves the Court with little guidance. Even assuming that MEVF is a state actor, however, the Court finds that defendant is still entitled to summary judgment.[22]

IV. Section 1983 Claim

>   42 U.S.C. § 1983 provides:
>
>   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[21]Rec. Doc. No. 14, Def.'s Mem. in Support of Mot. for Summ. J., pp. 2-3.

[22]The district court in *Yaeger* "assumed without deciding" that the fire department was a state actor. 980 F.2d at 339. The appellate court, however, noted that,
>   [i]f not corrected, this assumption might be costly to the thousands of volunteer fire departments around the country that may be needlessly exposed to section 1983 lawsuits. While the district court's reluctance to wade into an area as rife with conceptualism as the state action doctrine is understandable, that alternative is less appropriate for an appellate court.

*Id.* Without intending to shirk its jurisprudential duties, the Court finds that, by avoiding the state actor question, its decision rests on firmer ground. This provides the parties with greater confidence in the decision and properly leaves any precedent-setting to the circuit court.

7

Assuming that MEVF is a state actor falling within the ambit of §1983, plaintiff must next establish: (1) he suffered an adverse employment action; (2) his speech involved matters of public concern; (3) plaintiff's interest in the speech outweighs his employer's interest in efficiency; and (4) the speech precipitated the adverse employment action[23]. *Alexander v Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citing *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004)). After such a showing, the burden shifts to MEVF to prove that the Board would have terminated plaintiff in the absence of his protected speech. *Id.* (citing *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)).

MEVF concedes that plaintiff's termination was an adverse employment action and that his alleged speech advocating unionization would be considered protected speech involving a matter of public concern.[24] *See Commc'n Workers of Am.*, 392 F.3d at 741 (noting "courts that have considered this question have typically held that speech regarding union activities is speech on a matter of public concern"); *Boddie v. Columbus*, 989 F.2d 745, 750 (5th Cir. 1993) ("[S]peech in the context of union activity will seldom be personal; most often it will be political speech."). Neither party addresses the third factor, which balances plaintiff's interest in the protected speech with defendant's interest in efficiently providing services.[25]

---

[23]In *Communication Workers of America v. Ector County Hospital District*, 392 F.3d 733, 741 (5th Cir. 2004), *reh'g granted*, 402 F.3d 503 (5th Cir. 2005), the court applied a slightly modified version of this heuristic. 392 F.3d at 738. The language in the opinion relevant to the fourth factor in *Alexander* described the inquiry into the connection between the adverse employment action and the protected speech as "whether the protected speech was a substantial or motivating factor in the adverse employment decision." *Id.*

[24]Rec. Doc. No. 14, Def.'s Mem. in Support of Mot. for Summ. J., p. 3.

[25]Rec. Doc. No. 14, Def.'s Mem. in Support of Mot. for Summ. J., p. 3 ("The third element . . . is irrelevant for purposes of this motion.").

The Court is left to decide whether plaintiff has put forth sufficient evidence to create a genuine issue of material fact suggesting that his protected speech was a "substantial or motivating factor" in the decision to terminate him.  Plaintiff, however, has not brought evidence sufficient to raise a question of material fact.  The evidence he does suggest is based solely on inference and speculation, neither of which is sufficient to meet the summary judgment standard.

Plaintiff attempts to show a connection between his speech advocating unionization at the fire department and his subsequent termination.  He notes that he had a discussion with Chief LeBlanc regarding a union during which Chief LeBlanc stated that he did not think that a union would be appropriate or helpful at the fire department.[26]  Lupo also states that Chief LeBlanc mentioned to him that, if employees at the fire department lost benefits due to unionization, plaintiff could be fired for creating a hostile work environment.[27]  Chief LeBlanc's recollection of this conversation does not comport with that described by plaintiff.

Besides one second-hand comment, however, plaintiff admitted he had no evidence that any of the MEVF board members who voted to terminate him did so because of his union activity.[28]  He admits that he knew that board member Barrios was a union member.[29]  Plaintiff also admitted that, when Chief LeBlanc discussed the meeting plaintiff had arranged to discuss

---

[26]Rec. Doc. No. 19, p. 3; Pl.'s Ex. 1, Dep. of Perry LeBlanc, p. 55; Pl.'s Ex. 2, Dep. of Pl., p. 18.

[27]Rec. Doc. No. 19, p. 3; Pl.'s Ex. 2, Dep. of Pl., p. 19.

[28]Rec. Doc. No. 14, Def.'s Ex. P, Dep. of Pl., pp. 6-7.  When asked if he had evidence to suggest that board member Don Simoneaux voted to terminate him because of his union activity, plaintiff explained that, as told to him by another person, Simoneaux commented that "I don't belong to a union because I get everything that they get anyway."

[29]Rec. Doc. No. 14, Def.'s Ex. P, Dep. of Pl., p. 6.

9

union organization, he was not disciplined, even though such meetings were not to be held during work hours.[30]

Plaintiff includes several other allegations that provide nothing more than attenuated inferences that his termination was related to his union activity.  He notes that MEFV had not fired anyone for an accumulation of reprimands in the 12 years that LeBlanc had been chief; that other employees had one or two reprimands on their records and were not terminated; that Chief LeBlanc considered plaintiff to be a great employee for his first six months of work; and that the timing of his termination, just a few months after arranging the union meeting, suggests a causal connection.[31]  Plaintiff also alleges that his termination was in violation of a MEVF disciplinary by-law.[32]

Each member of the MEVF board of directors, however, testified that plaintiff was not terminated because of his union support.[33]  Plaintiff has not presented evidence of any casual link between his union activity and his discharge sufficient to cast doubt on the non-retaliatory reasons for his termination and such that a reasonable jury could find that plaintiff's protected speech had any bearing on his discharge.[34]  *Cf. Commc'n Workers*, 392 F.3d at 746 (finding a casual connection where defendant admitted that plaintiff would not have been disciplined but

---

[30]Rec. Doc. No. 14, Def.'s Ex. P, Dep. of Pl., pp. 18-19.

[31]Rec. Doc. No. 19, pp. 6-7.

[32]Rec. Doc. No. 19, pp. 3-4.

[33]Rec. Doc. No. 14, Def.'s Ex. B-H; Def.'s Ex. Q, p. 99.

[34]Because plaintiff's claim fails to create a genuine issue of material fact, the Court finds no need to address defendant's contention that MEVF had no official policy or custom that would subject it to § 1983 liability.

for his protected speech and where plaintiff's prior employment record was devoid of any misconduct); *Alexander*, 392 F.3d at 146 (inferring a casual connection where employee received a direct warning that he could be fired for his protective speech). Moreover, his allegation that his termination occurred in violation of a MEVF by-law is not supported by the deposition testimony to which plaintiff cites.[35]

## V. State Law Claims

Having dismissed plaintiff's federal claim, the Court must now determine whether to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Before the enactment of § 1367, the United States Supreme Court noted "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218, 228 (1966), *quoted in Noble*, 996 F.2d at 799.

---

[35] Plaintiff attempts to support his contention by citing the deposition testimony of Chief LeBlanc. Chief LeBlanc testified that "In our bylaws it states that if you get written up three times for the same offense in one year, you are automatically terminated." Rec. Doc. No. 14, Pl.'s Ex. Q, p. 66. Plaintiff appears to argue that, because he was not written up for three of the same offenses, his termination violated the bylaw to which Chief LeBlanc is referring. This argument, however, ignores the possibility that there are other means of terminating an employee beyond this automatic termination system. Later in his deposition testimony, Chief LeBlanc notes that "[y]ou can fire anybody for a one-time offense. It depends on how severe it is." Rec. Doc. No. 14, Pl.'s Ex. Q, p. 67.

In a footnote, defendant asserts that if plaintiff's § 1983 claim cannot be proven, his state law claims should fail as well.[36]  Defendant does not include any further argument with respect to this issue, and plaintiff's opposition does not address his state law claims either.  *Cf. Metropolitan Wholesale Supply v. The M/V Royal Rainbow*, 12 F.3d 58, 61 (5th Cir. 1994) (holding that where "the parties have presented summary judgment evidence and briefed their arguments on the remaining . . . issue, judicial economy and convenience weigh in favor of exercising jurisdiction.").  In light of plaintiff's failure to maintain his § 1983 claim, the Court is skeptical of plaintiff's ability to succeed with analogous claims pursuant to state law.  Considering the failure of either party to adequately brief the issue and the preliminary stage of this litigation, however, the Court finds it appropriate to exercise its discretion pursuant to 28 U.S.C. 1367(c) and remand the remaining issues to state court.

Accordingly,

For the above reasons, **IT IS ORDERED** that plaintiff's motion to strike is **GRANTED**.  **IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED** with respect to plaintiff's claim pursuant to 42 U.S.C. § 1983.  **IT IS FURTHER ORDERED** that plaintiff's remaining state law claims are **REMANDED** to the Orleans Parish Civil District Court.

New Orleans, Louisiana, February __22nd__, 2006.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[36]Rec. Doc. No. 14, Def.'s Mem. in Support of Mot. for Summ. J., p. 1, n. 1.